# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

## 24-2174

---

### JAMES SPRINGER

**Plaintiff-Appellant**

v.

### SEVENTH JUDICIAL DISTRICT COURT, et al.,

**Defendants-Appellees.**

---

### Appeal from the United States District Court
### For the District of New Mexico
### No. 1:23-CV-00499-MIS-JMR

---

## APPELLANT'S OPENING BRIEF

---

A. Blair Dunn, Esq.
WESTERN AGRICULTURE,
RESOURCE AND BUSINESS
ADVOCATES, LLP
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com

Zachary J. Cook, Esq.
ZACH COOK, LLC
1703 Sudderth #425, Ste 5
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

*Attorneys for Plaintiff-Appellant*

***Oral Argument Requested***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF PRIOR RELATED APPEALS .................................. 1

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENTS OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE .............................................................. 2

STATEMENT OF THE FACTS ............................................................ 3

SUMMARY OF THE ARGUMENT ................................................... 6

ARGUMENT ...................................................................................... 6

    I.      Standard of Review ................................................... 6

    II.    The District Court Erred in Determining Appellees
           were Entitled to Judicial and Quasi-Judicial Immunity Circuit ............... 6

    III.   While a District Court Can Exercise Discretion to
          Decline to Hear Claims Under the New Mexico Civil Rights Act
          That Does Not Equate to the Claims Being Barred
          by Eleventh Amendment Immunity……………………………...……..15

CONCLUSION ................................................................................. 17

ORAL ARGUMENT STATEMENT ................................................ 17

CERTIFICATE OF COMPLIANCE ................................................ 19

CERTIFICATE OF DIGITAL SUBMISSION ................................ 19

CERTIFICATE OF SERVICE .......................................................... 19

Attachment 1 –Order
(ECF Doc 114) ............................................................... Aplt App 162-180

# TABLE OF AUTHORITIES

**Cases**

*Bradley v. Fisher*,
13 Wall. 335, 20 L.Ed. 646 (1872). ........................................................14

*Cohen v. California*,
403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971)........................................2,13

*De Jonge v. Oregon*,
299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937)........................................................8

*Forrester v. White,*
484 U.S. 219, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)...........................................12

*Garley v. Sandia Corp.*,
236 F.3d 1200 (10th Cir. 2001) ................................................................6

*Kazarinoff v. Wilson*,
2023 WL 9183661 (D. Colo. Nov. 21, 2023) ................................................... 10, 11

*Pierson v. Ray*,
386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).............................................14

*Mireles v. Waco*,
502 U.S. 9 (1991)...........................................................................14

*New York Times Co. v. Sullivan*,
376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).............................................8

*Stevens v. Osuna*,
877 F.3d 1293 (11th Cir. 2017) .............................................................12

*Stump v. Sparkman*,
435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)...................................... 12, 14

*Supreme Court of Virginia v. Consumers Union of U. S., Inc.*,
446 U.S. 719, 100 S. Ct. 1967, 64 L. Ed. 2d 641 (1980)........................ 9, 10, 13, 14

*Terminiello v. Chicago*,
337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)........................................................8

*Valdez v. Grisham*,
676 F. Supp. 3d 1021 (D.N.M. 2022). ....................................................................16

**Statutes and Rules**

U.S. Const. amend. I ............................................................................................ 7

28 U.S.C. § 1331 ................................................................................................. 1

28 U.S.C. § 2201 ................................................................................................. 1

28 U.S.C. § 2202 ................................................................................................. 1

42 U.S.C. § 1983 ................................................................................ 1, 9, 14, 15

28 U.S.C.A. § 1367………………………………...……………………………16

NMSA 1978 § 41-4A-9…………………………………………………………15,16

## STATEMENT OF PRIOR RELATED APPEALS

There was a prior interlocutory appeal of the denial of a preliminary injunction in the matter, No. 23-2158 and a prior appeal dismissed for lack of finality No. 24-2087.

## JURISDICTIONAL STATEMENT

The United States District Court for the District of New Mexico had subject matter jurisdiction to hear the underlying case pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292. The District Court for the District of New Mexico Entered an Final Judgement dismissing Plaintiff's Second Amended Complaint on November 1, 2024. Plaintiff filed a timely Notice of Appeal on November 22, 2024.

## STATEMENTS OF THE ISSUES

1. Did the district court err in dismissing Plaintiff's Section 1983 claims for declaratory and injunctive relief only under judicial immunity?

2. Did the district court err in dismissing the state law claims under Eleventh Amendment immunity, given that New Mexico has specifically waived sovereign immunity for Plaintiff's state law claims brought pursuant to the New Mexico Civil Rights Act?

## STATEMENT OF THE CASE

This case presents an important and critical question, core to the public's faith in judiciary, that our judiciary is not set entirely above the critical First Amendment limitations on government actions. Specifically, for much time it has been understood that *inside* of the courtroom judges enjoy great latitude to maintain decorum through powers of contempt and that they enjoyed absolute immunity for their deliberative decisions. Mr. Springer does <u>not</u> dispute this point, but since at least the 1970s it has been understood that citizens enjoy First Amendment liberties outside of the Courtroom to conduct that is disruptive and as indecorous as wearing apparel into the courthouse that said "Fuck the Draft" *Cohen v. California*, 403 U.S. 15, 16, 91 S. Ct. 1780, 1784, 29 L. Ed. 2d 284 (1971), without fear of reprisal or punishment from his government.[1]

Yet, here, when Mr. Springer, acting as investigative reporter for his YouTube channel, angered the state judiciary by causing a disruption outside of the courtroom by his reporting on misfeasance and criticizing rules and policies of the New Mexico judiciary, which angered his then almost 500,000 followers on his channel leading to a public outcry directed at the state court and its staff. After the Seventh Judicial District Court, acting through its judges and staff, retaliated against him in several

---

[1] At its core this question has to turn upon whether the judiciary has properly deemed itself so elevated that at no juncture can it be liable for violating a citizen's constitutional liberty as long as they can justify it by calling the citizen disruptive.

ways, banning him from the courthouses without constant law enforcement supervision, excluding him from public hearings and denying him government services including statutory rights to public information needed for his reporting.

Mr. Springer's *Second Amended Complaint Pursuant* was filed in the Federal District Court of New Mexico on February 21, 2024. (Aplt App 073-093). Unsatisfied with the Appellees' pending Motion to Dismiss (Aplt App 094-113), the district court *sua sponte* entered an Order to Show Cause (Aplt App 130-142) and then after briefing on the Court's motion to dismiss (Aplt App 143-160) dismissed Mr. Springer's Second Amended Complaint. (Aplt App 161-179).

It is also important to note that Mr. Springer, even before the Court began its advocacy for the Defendants, in its Order to Show Cause that effectively ended the case, raised concerns that the district court had demonstrated a level of inter-judicial bias in favor of the Defendants that caused Mr. Springer to reasonably question the district court's impartiality (Aplt App 016-024), which the district court denied seemingly out of hand (Aplt App 025-038).

## STATEMENT OF THE FACTS

On February 28, 2023, the Chief Judge of the Seventh Judicial District Court, Defendant Mercedes C. Murphy ("Chief Judge Murphy"), issued an Administrative Order "in the interest of the safety and security of Judges, Special Commissioners, Hearing Officers, and other Court personnel," barring Mr. Springer from entering the

Torrance County District Courthouse in Estancia, New Mexico, "unless appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the Torrance County Sheriff's Office, while in the building." (Aplt App 161-162)

On March 23, 2023, Chief Judge Murphy issued an Amended Administrative Order barring Mr. Springer from entering other courthouses within the Seventh Judicial District, "unless appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the [sic] law enforcement, while in any of the buildings."    The same day, Appellee Jones signed a second letter to Mr. Springer stating that he entered the Moriarty Magistrate Court for non-court business and was being "disruptive and threatening" in the courthouse. The March 23rd Letter advised Mr. Springer that Chief Judge Murphy amended the Administrative Order to require that Plaintiff be escorted and accompanied in any of the Seventh Judicial District's magistrate or district courthouses. (Aplt App 162-163)

On May 18, 2023, Mr. Springer attempted to attend a public hearing as a member of the press to report on the case in a criminal matter before the Honorable Mercedes Murphy by way of a video conferencing platform. After dialing in to the public hearing via the video conferencing platform, Judge Murphy summarily ejected Plaintiff from the video conferencing platform and from the public hearing without providing Plaintiff notice and an opportunity to be heard on the matter of whether he

could attend the public hearing. (Aplt App 163)

On May 24, 2023, Judge Shannon Murdock-Poff issued an order excluding Plaintiff from a hearing in a civil matter that Plaintiff planned to attend as a member of the press and the public. (Aplt App 163).

On multiple dates, Appellee Rossignol, a court clerk, refused Mr. Springer's statutory right under New Mexico law to petition his government for redress by inspecting public records in the clerk's office. Appellee Rossignol out of retaliation required state police presence to harass and intimidate Mr. Springer when he entered the Estancia District Court house for the purpose of conducting court business associated to making records requests. This retaliation culminated in an outright refusal to allow protected petitioning activity to exercise Mr. Springer's statutory right to request public records on June 8, 2023 and Ms. Rossignol required that Torrance County Sheriff's Deputy Young chase Plaintiff from the building which he did. (Aplt App 163-164)

Ms. Rossignol, at the direction of Judge Murphy, falsely reported to the New Mexico State Police that Mr. Springer was an armed threat and proceeded to close her government office to the public during normal business hours in an effort to place Mr. Springer's life in jeopardy and to deprive him of his statutory and constitutional rights to petition his government for redress. (Aplt App 164)

## SUMMARY OF THE ARGUMENT

The district court improperly engaged in advocacy to incorrectly determine that Appellees were entitled to judicial and quasi-judicial immunity from declaratory relief for past liability and prospective declaratory relief. The district court incorrectly invalidated New Mexico's Civil Rights Act by incorrectly affording such a claim Eleventh Amendment immunity even though such sovereign immunity had been specifically waived by the New Mexico Legislature's adoption of the Act and that the district court could have exercised supplemental jurisdiction that was not barred by the Eleventh Amendment.

## ARGUMENT

### I.    Standard of Review

The Federal Court of Appeals for the 10th Circuit reviews the district court's dismissal for failure to state a claim and for lack of jurisdiction *de novo*. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1206 (10th Cir. 2001)

### II.    The District Court Erred in Determining Appellees were Entitled to Judicial and Quasi-Judicial Immunity.

As James Madison once said, "Our First Amendment freedoms give us the right to think what we like and **say what we please**. And if we the people are to govern ourselves, we must have these rights, *even if they are misused by a minority*." (Emphasis added). However, it is now clear that the district court incorrectly agreed that the state judiciary here is immune from public criticism or speech and the First

Amendment as applied to the States under the Fourteenth Amendment, if they deem it to be disruptive to their operation of the courts, nor that the First Amendment does, in fact, apply to judiciary. But, as public elected official or employees, there simply is no basis for that assertion accepted by the district court. Thus, it bears repeating that the First Amendment, which certainly applies to the states unequivocally, requires that "[judges for the Seventh Judicial District] shall make no [order] … ***abridging*** the freedom of speech, or of the press." U.S. Const. amend. I. (Emphasis added). Instead, the district court's decision lays bare that it was animated to protect the state judiciary from being offended by the content of Mr. Springer's speech, which called Appellees names, mocked them, satirized them, and called into question their honesty and competency, ***outside of the courtroom***.

And that was the driving force behind the Appellees' actions to *abridge* Mr. Springer's rights to speech and press, without any pre or post deprivation procedural due process. Thus, Mr. Springer's Second Amended Complaint alleged facts (which the district court should have construed in his's favor, even if disputed or re-characterized by Appellees) that supported claims associated with violations of the protections guaranteed under the First Amendment and, perhaps more importantly, at a minimum in violation of his right to Procedural Due Process Right protected by the Fourteenth Amendment.

However, overarchingly obvious from the briefing of the Appellees and

discernable from the district court's orders, was outrage over the content of what Mr. Springer had said about Appellees (in their official capacities as elected officials or government employees) and it obscured the district court's ability to recognize the wisdom of Justice Brennan, writing in the landmark case of *New York Times Co. v. Sullivan,* that "we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270–71, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964) *citing Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131; *De Jonge v. Oregon*, 299 U.S. 353, 365, 57 S.Ct. 255, 81 L.Ed. 278.

Quite simply, there was no special exclusion for the judiciary (outside of the powers of contempt to maintain decorum and judicial operation ***in the courtroom***) that makes judges or court staff immune from profane, caustic, demeaning, inflammatory or other sharp criticism by a citizen on social media or in correspondence sent to other government agencies that animated the district court's decision to afford Appellees judicial and quasi-judicial immunity for non-judicial acts. The district court's decision ratified the actions of the Appellees to punish Mr. Springer for calling them, in their capacity as public officials, names they don't like, or exposing their alleged incompetence/corruption to the public.

Mr. Springer's claims against Seventh Judicial District Court and more specifically the members (judges or staff) under Section 1983 were *only* for declaratory and injunctive relief pursuant to the Supreme Court's holding that:

> However, we have never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts. The Courts of Appeals appear to be divided on the question whether judicial immunity bars declaratory or injunctive relief;[13] we have not addressed the question.[14]
>
> *736 **1977 We need not decide whether judicial immunity would bar prospective relief, for we believe that the Virginia Court and its chief justice properly were held liable in their enforcement capacities. As already indicated, § 54–74 gives the Virginia Court independent authority of its own to initiate proceedings against attorneys. For this reason the Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were.

*Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 735–36, 100 S. Ct. 1967, 1976–77, 64 L. Ed. 2d 641 (1980).  Thus, because Mr. Springer is not suing because of a *decision made in a case before the Appellees or even the regulation of his conduct in a courtroom*, the Supreme Court has concluded that Appellees, here, were proper defendants in their official capacity.  Of equal importance, the non-deliberative administrative orders **have never been rescinded** and to this day continue to abridge Mr. Springer's rights without ever having afforded him pre or post deprivation procedural due process, there is **no** appeal afforded by law from an *administrative order*, yet, the harm is on-going.

Likewise, the Supreme's Court decision noted above, was also contrary to the

district court's award of judicial and quasi-judicial immunity.  In *Supreme Court of Virginia*, the Supreme Court addressed concerns about the Virginia Supreme Court's regulation of the conduct of attorneys in that state.  The Supreme Court, as noted in the cited passage above, found that regulation of the conduct of attorney's practicing before the Virginia courts, namely First Amendment advertising, was an *enforcement* action *not* a judicial action qualifying for absolute judicial immunity.  Likewise, here, the district court identified, and Appellees alleged that what animated the suppression of Mr. Springer's rights to speech and press through administrative orders and exclusion from public hearings was the enforcement of decorum (First Amendment conduct of speech and press) of private citizens appearing in Appellees' courthouses (not even specficially courtrooms). There is patently no functional difference between the regulation of attorneys by members of the judiciary in the practice of law before the courts and the *enforcement* (if that was the actual reason for their actions versus ire towards the content of Mr. Springer's speech and reporting on the internet) of rules of decorum on Mr. Springer here.

Of the decisions that have been cited and ostensibly will be cited again by Appellees that follow the Supreme Court's decision in *Supreme Court of Virginia*, none from this Circuit squarely address this case. Specifically, the Appellees have relied upon a recommendation of a magistrate in *Kazarinoff v Wilson*, despite the fact that the recommendation does not entirely support the contention that offer instead

10

providing that:

> While Plaintiffs are correct that a judge's administrative acts (rather than judicial acts) are not entitled to absolute judicial immunity, *see, e.g., Stein*, 520 F.3d at 1195, Plaintiffs fail to direct the Court to any factual allegations contained in the Complaint to suggest that any of Wilson's actions were, in fact, administrative. In the Complaint, they merely allege that "Wilson, the presiding judge, was aware that Plaintiffs were at the courthouse trying to access the court. Instead of ordering that Plaintiffs be allowed access to the court, Defendant Wilson barred Plaintiffs and continued the trial without Plaintiffs present ...." Dkt. 1, ¶31.
>
> Plaintiffs' additional statements—concerning the delegation of administrative powers to chief judges of Colorado's judicial districts—do not remedy the lack of factual allegations in the Complaint to suggest an administrative act by Wilson. *See id.* at ¶58. Without alleging supportive facts, the Court cannot accept such legal conclusions as true. *See Twombly*, 550 U.S. at 555. And to be sure, judicial control over who may appear before a judge is inherently a judicial act, not an administrative one. *See Mireles v. Waco*, 502 U.S. 9, 19 (1991) ("A judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge."); *see also Huminski v. Corsones*, 396 F.3d 53, 79-77 (10th Cir. 2005).

*Kazarinoff v. Wilson*, 2023 WL 9183661, at *5 (D. Colo. Nov. 21, 2023), *report and recommendation adopted*, *Kazarinoff v. Wilson*, 2024 WL 98385 (D. Colo. Jan. 9, 2024).[2] In fact, there is no analysis from either the district court or the Appellees that has been provided that supports their *Mireles v. Waco*, 502 U.S. 9, 11 (1991) position that *administrative orders and enforcement of those administrative orders* was *judicial* and not *administrative.* Instead, in the litany of cases they have cited not one

---

[2] *Kazarinoff* does *not* discuss or reach *Supreme Court of Virginia* in its analysis relying on a *pro se* failure to plead that judges actions were administrative in nature not judicial which is not at issue in this case.

explains how actions of a judge that are ***administrative*** in nature (**and here specifically in name** as well) are not actually "nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity." *Id.* at 11; citing *Forrester v. White,* 484 U.S., at 227–229, 108 S.Ct., at 544–545; *Stump v. Sparkman,* 435 U.S., at 360, 98 S.Ct., at 1106.

Thus, the proposition offered from Appellees relying on Eleventh Circuit that the *judge's barring of attorney from courtroom and courthouse was a judicial act* is not as simple as they claim *Stevens v. Osuna*, 877 F.3d 1293 (11th Cir. 2017) makes the analysis for this Court. Instead, the Eleventh Circuit also considered and relied upon the reasoning that:

> Moreover, Judge Cassidy's supposed order to remove Plaintiff from the building "arose directly and immediately out of" Judge Cassidy's dealings with Plaintiff in his judicial capacity: directing Plaintiff only moments earlier to leave his courtroom after closing to the public the immigration hearing.[11] See Stump, 435 U.S. at 361, 98 S.Ct. 1099 (a factor tending to show that a judge acted within his judicial capacity is if "the confrontation arose directly and immediately out of a visit to the judge in his official capacity" (citing with approval McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir. 1972))). We stress that—for purposes of our immunity analysis—we need not decide (and do not decide) whether Judge Cassidy's decision, in this instance, to have Plaintiff removed from the court building was without error: that Judge Cassidy, on the pertinent afternoon, was acting within the scope of his judicial capacity when he dealt with Plaintiff is adequate.

*Id.* at 1306. Here, the administrative orders and the removal of Mr. Springer from the future proceedings did not *directly* arise out either Judge Murphy's or Judge Murdock-Poff's dealings with Mr. Springer, because they never actually dealt with

him in a judicial capacity.   Ultimately, the actions taken by Appellees are administrative, enforcement and regulatory taken out of retaliation for speech, press and petitioning conduct by Mr. Springer, that were not deliberative judicial actions as required by *Mireles.* None of the procedural safeguards (appeal[3]) for judicial actions were available or afforded to Mr. Springer in this instance.  Assigning the Appellees' actions immunity here, come deprives a citizen of any due process whatsoever distinguishable from all of the cases cited by Appellees and the district court, but squarely in line with the Supreme Court's decision regarding the regulation of attorney's in *Supreme Court of Virginia.*

Importantly, the district court erred in construing facts, contrary to Mr. Springer's pleading, that it was the enforcement of decorum (apparently inside a courtroom) that justified the actions taken by Appellee. However, it was properly pleaded that it was Mr. Springer's conduct <u>outside of the courtroom and largely outside of the courthouse</u> was what resulted in his punishment to abridge his rights just like *Cohen's* "Fuck the Draft". Thus, the district court's decision to award judicial and quasi-judicial immunity runs squarely afoul of *Supreme Court of Virginia* to construe facts in favor of the Appellees and precisely akin to the conduct outside of the courtroom that *Cohen* placed outside of the government's reach.

Moreover, the important distinction at play here of a suit for declaratory and

---

[3] Again, contempt is in important to revisit here because a party has a right to appeal from and order of contempt.

injunctive relief versus absolute judicial immunity from suit for damages was stressed in *Supreme Court of Virginia* stating that "[a]dhering to the doctrine of *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872), we have held that judges defending against § 1983 *735 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)." *Id.* at 734–35. The Supreme Court's consideration on *Stump* in *Supreme Court of Virginia* is also helpful here because it marks the extension of the law to more analogous facts in a suit seeking only declaratory and injunctive relief in a more recent decision of the Supreme Court. (*Supreme Court of Virginia* is still good law that is not questioned by any subsequent decision of the Supreme Court or the Tenth Circuit and superseded the district court's cited cases).

Mr. Springer has never sought *damages* under Section 1983 for the individual Appellees' enforcement actions taken against him, *i.e.* excluding him from the building without chilling law enforcement escorts or excluding him from public hearings as punishment for an earlier minor violation of the rules requiring masking and prohibiting videotaping. Thus, based upon the Supreme Court's clear holding in *Supreme Court of Virginia*, Appellees here were not entitled to absolute judicial immunity or quasi-judicial immunity for their enforcement actions taken to

infringe upon Mr. Springer's rights to speech and press as his suit was limited to declaratory and injunctive relief under Section 1983. Certainly, *nothing* excuses the Appellees actions to deprive Mr. Springer of his rights with **zero** pre or post procedural due process.

### III.    While a District Court Can Exercise Discretion to Decline to Hear Claims Under the New Mexico Civil Rights Act That Does Not Equate to the Claims Being Barred by Eleventh Amendment Immunity

Regarding the district courts award of Eleventh Amendment immunity for the Seventh Judicial District Court, notably, the district court's concerns were focused on exception or waivers of the immunity under the New Mexico Tort Claims Act, but entirely misconstrues the waiver of Eleventh Amendment immunity for violations of civil rights adopted by the Legislature in 2021 in the New Mexico Civil Rights Act stating:

> The state shall not have sovereign immunity for itself or any public body within the state for claims brought pursuant to the New Mexico Civil Rights Act, and the public body or person acting on behalf of, under color of or within the course and scope of the authority of the public body provided pursuant to the New Mexico Civil Rights Act shall not assert sovereign immunity as a defense or bar to an action.

NMSA 1978 § 41-4A-9. Despite the fact that Mr. Springer was a person who claimed to have suffered a deprivation of his rights pursuant to the bill of rights of the constitution of New Mexico due to acts of the employees and official of the Seventh Judicial District, the district court quibbled to state that New Mexico has not waived

15

the sovereign immunity enshrined in the Eleventh Amendment *outside of a New Mexico Court*. Yet, is well understood that, just like in Tort Claims Act claims, federal district court's may exercise supplemental jurisdiction to hear those claims arising under the same set of facts under 28 U.S.C.A. § 1367(a) and in that situation those claims are not barred from being heard in the federal district courts by Eleventh Amendment immunity. Plainly, the district court's declination to exercise supplemental jurisdiction does not require a determination that Mr. Springer's claims are barred by Eleventh Amendment immunity here. Also tellingly, the district court's analysis does not discuss or even touch upon NMSA 1978 § 41-4A-9. Moreover, the district court's analysis, muddling claims that commonly appear in federal district court in New Mexico under the New Mexico Tort Claims Act under supplemental jurisdiction, with claims under the New Mexico Civil Rights Act with its specific waiver of sovereign immunity is borderline incoherent. If the district court was declining to exercise supplemental jurisdiction over Mr. Springer's New Mexico Civil Rights Act claim then it permissibly could have done so just as the district court *actually* stated (not in dicta in a interim order) it was in *Valdez v. Grisham*, 676 F. Supp. 3d 1021, 1045 (D.N.M. 2022) ("Having determined that Plaintiffs' federal claims are subject to dismissal, the only remaining issue is whether Defendants violated the New Mexico Constitution. The Court finds that this issue is best left for a state court's determination. *Id.* at 1230. Accordingly, the Court declines to exercise

16

supplemental jurisdiction over Plaintiff's remaining state law claims and will dismiss them without prejudice.")

## CONCLUSION

The Court should reverse and remand the matter back to district court, cautioning the district court against further inter-judicial advocacy on behalf of Appellees.

## ORAL ARGUMENT STATEMENT

Pursuant to 10th Cir. L.R. 28.2(C)(4), Appellants request oral argument in this matter. Such argument is necessary because the issues involve important questions of procedural law. Appellant respectfully suggests that the Court may benefit from the interactive conversation that oral argument would provide on these issues.

Respectfully submitted this February 13, 2025.

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

By: */s/ A. Blair Dunn*
    A. Blair Dunn, Esq.
    400 Gold Ave. SW, Suite 1000
    Albuquerque, NM 87102
    Telephone:  (505) 750-3060
    Facsimile:   (505) 226-8500
    Email: abdunn@ablairdunn-esq.com

Zach Cook, LLC

By: */s/ Zach Cook*
    Zach Cook, Esq.

17

1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
Email: zach@zachcook.com

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that the foregoing complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,290 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B) (iii). This opening brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman.

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to the 10th Circuit ECF User's Manual, Section II.J, I hereby certify with respect to the foregoing document, that:

1) All required privacy redactions have been made per 10th Cir. R. 25.5;

2) Required hard copies will be filed with the court upon acceptance; and

3) The digital submission has been scanned for viruses with the most recent version of Microsoft Windows Defendant Antivirus Version: 1.421.1876.0 updated Feb. 13, 2025 and according to this program is free of viruses.

## CERTIFICATE OF SERVICE

I, A. Blair Dunn, hereby certify that on February 13, 2025, I caused to be served a copy of the foregoing upon parties of record electronically via email.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

      Plaintiff,

v.

                                         Case No. 1:23-cv-00499-MIS-JMR

SEVENTH JUDICIAL DISTRICT COURT,
MERCEDES MURPHY,
SHANNON MURDOCK-POFF,
JASON JONES, and
SUSAN ROSSIGNOL,

      Defendants.

## ORDER DISMISSING SECOND AMENDED COMPLAINT

**THIS MATTER** is before the Court on Plaintiff's Response to the Court's Order to Show Cause, ECF No. 112, and Defendants' Reply thereto, ECF No. 113.

Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DISMISS** Counts I, II, and III **with prejudice** to the extent they seek injunctive relief and retrospective declaratory relief, **DISMISS** Counts I, II, and III **without prejudice** to the extent they seek prospective declaratory relief, and **DISMISS** Count IV **without prejudice** for lack of subject matter jurisdiction.

### I.      Background

On February 28, 2023, the Chief Judge of the Seventh Judicial District Court, Defendant Mercedes C. Murphy ("Chief Judge Murphy"), issued an Administrative Order "in the interest of the safety and security of Judges, Special Commissioners, Hearing Officers, and other Court personnel," barring Plaintiff from entering the Torrance County District Courthouse in Estancia, New Mexico, "unless appearing for a hearing or having specific Court business, in which cases

**APLT APP 162**

[Plaintiff] shall be escorted and accompanied by the Torrance County Sheriff's Office, while in the building."  ECF No. 99-1 ("Administrative Order");[1] see also ECF No. 99 ¶¶ 15-18.

On March 1, 2023, two officers with the New Mexico State Police delivered a copy of the Administrative Order to Plaintiff.  ECF No. 99 ¶ 15.  At the same time, the officers delivered to Plaintiff a copy of a letter dated March 1, 2023, to Plaintiff from Defendant Jason Jones—the Court Executive Officer of the Seventh Judicial District Court.  Id. ¶ 19.  The Letter states:

> As the CEO of the Seventh Judicial District Court, it has been brought to my attention that court staff are being harassed on your behalf and has impacted court resources.  The Court has issued an Administrative Order on March 1, 2023, that if you are required to be in court or have official court business you will check in with the Torrance County Sheriff's Office to be escorted and accompanied pursuant to the Administrative Order.

ECF No. 99-2 ("March 1st Letter").[2]

On March 23, 2023, Chief Judge Murphy issued an Amended Administrative Order barring Plaintiff from entering other courthouses within the Seventh Judicial District, "unless appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the [sic] law enforcement, while in any of the buildings."  ECF No. 99-3 ("Amended Administrative Order");[3] see also ECF No. 99 ¶ 21.  The same day, Defendant Jones signed a second letter to Plaintiff stating that Defendant entered the Moriarty Magistrate Court for non-court business and was being "disruptive and threatening" in the courthouse.  ECF No. 99-4 ("March 23rd Letter").[4]  The March 23rd Letter advises Plaintiff that Chief Judge Murphy

---

[1]     The Administrative Order is attached as Exhibit 1 to the Second Amended Complaint.  ECF No. 99-1

[2]     The March 1st Letter is attached as Exhibit 2 to the Second Amended Complaint.  ECF No. 99-2.

[3]     The Amended Administrative Order is attached as Exhibit 3 to the Second Amended Complaint. ECF No. 99-3.

[4]     The March 23rd Letter is attached as Exhibit 4 to the Second Amended Complaint.  ECF No. 99-4.

amended the Administrative Order to require that Plaintiff be escorted and accompanied in any of the Seventh Judicial District's magistrate or district courthouses.  Id.

On May 18, 2023, Plaintiff attempted to attend a public hearing "as [a] member of the press to report on the case in a criminal matter before the Honorable Mercedes Murphy by way of a video conferencing platform."  ECF No. 99 ¶ 25.  "After dialing in to the public hearing via the video conferencing platform, Judge Murphy summarily ejected Plaintiff from the video conferencing platform and from the public hearing without providing Plaintiff notice and an opportunity to be heard on the matter of whether he could attend the public hearing."  Id. ¶ 26.

"On May 24, 2023, Judge Shannon Murdock-Poff issued an order . . . excluding Plaintiff from a hearing in a civil matter . . . that Plaintiff planned to attend as a member of the press and the public."  Id. ¶ 27 (citing "Order Excluding Presence," Luna v. Cooke-Lovato, Case No. D-722-DV-2019-00050 (7th Jud. Dist. Ct. (Torrance Cnty.) May 24, 2023), ECF No. 99-5).[5]

The Second Amended Complaint alleges that "[o]n multiple dates, Susan Rossignol has…refused Plaintiff's statutory right under New Mexico law to petition his government for redress by inspecting public records in the clerk's office."[6]  Id. ¶ 28.  It alleges that "Defendant Rossignol out of retaliation has required state police presence to harass and intimidate Plaintiff when he entered the Estancia District Court house for the purpose of conducting court business associated to making records requests."  Id. ¶ 29.  "This retaliation culminated in an outright refusal to accept protected petitioning activity to exercise his statutory right to request public records on

---

[5]     The Order Excluding Presence is attached as Exhibit 5 to the Second Amended Complaint.  ECF No. 99-5.

[6]     The Second Amended Complaint alleges that Defendant Rossignol is "a clerk of the Seventh Judicial District Court of New Mexico . . . ."  ECF No. 99 ¶ 6.

June 8, 2023 and Ms. Rossignol requiring that Torrance County Sheriff's Deputy Young chase

Plaintiff from the building which he did." Id. ¶ 30(1).[7]  It further alleges that

> Defendant Rossignol, upon information and belief, at the direction of Defendant
> Murphy, falsely reported to the New Mexico State Police that Plaintiff was an
> armed threat and proceeded to close her government office to the public during
> normal business hours in an effort to place Plaintiff' [sic] life in jeopardy and to
> deprive him of his statutory and constitutional rights to petition his government for
> redress.

Id. ¶ 35(1).[8]

On June 9, 2023, Plaintiff initiated this action by filing a Complaint with an incorporated

Motion for Temporary Restraining Order and Preliminary Injunction.  See ECF No. 1.  On

September 22, 2023, the Court issued an Amended Order denying the Motion for Temporary

Restraining Order and Preliminary Injunction, finding that Plaintiff failed to establish a substantial

likelihood of success on the merits of his claims.  ECF No. 38.

On November 27, 2023, Plaintiff filed an Amended Complaint, ECF No. 73, which

Defendants moved to dismiss, ECF No. 77.  On February 9, 2024, the Court issued an Order

granting in part Defendants' Motion to Dismiss the Amended Complaint, finding that (1) the Court

lacked personal jurisdiction over Chief Judge Murphy, Judge Murdock-Poff, Defendant Jones, and

the Seventh Judicial District Court because Plaintiff failed to properly serve those Defendants,

ECF No. 97 at 21, and (2) the claims against Defendant Rossignol—Counts II and III—failed to

state a claim upon which relief can be granted, id. at 26-32.  The Court provided Plaintiff leave to

---

[7]       The Second Amended Complaint contains two paragraphs numbered "30."  ECF No. 99.  The
Court's citation to paragraph 30(1) refers to the first paragraph 30, sequentially.

[8]       The Second Amended Complaint contains two paragraphs numbered "35."  ECF No. 99.  The
Court's citation to paragraph 35(1) refers to the first paragraph 35, sequentially.

APLT APP 165

serve Chief Judge Murphy, Judge Murdock-Poff, Defendant Jones, and the Seventh Judicial District Court and to file a Second Amended Complaint.  Id. at 33-34.

On February 21, 2024, Plaintiff filed the operative Second Amended Complaint asserting four causes of action.

**Count I** alleges a claim under 42 U.S.C. § 1983 predicated on violations of the First Amendment rights to freedom of the press and speech, which Plaintiff characterizes as "viewpoint discrimination," against Chief Judge Murphy and Judge Murdock-Poff.  ECF No. 99 at 36, 30(2)-37.[9]  Specifically, it alleges that Chief Judge Murphy and Judge Murdock-Poff "engaged in viewpoint discrimination by banning and excluding Plaintiff from a public places [sic] and hearings prohibiting him attending and reporting on public matters."  Id. ¶ 31(2).[10]

**Count II** alleges a claim under 42 U.S.C. § 1983 predicated on retaliation in violation of the First Amendment rights to freedom of the press and speech "including denial of the protected liberty interest in petitioning the Government" against all Defendants.  Id. ¶¶ 38-42.  Specifically, it alleges that

> Defendants Jason Jones and Susan Rossignol have each undertaken retaliatory efforts (Jones to issue threatening letters designed to chill Plaintiff's exercise of speech, press and petitioning and Rossignol to refuse Plaintiff's statutory right to inspect public records, to give false reports to state police about Plaintiff being an armed threat endangering his life, and cutting off his ability to petition his government by closing the government office during normal business hours when Plaintiff was present.) Upon information, all retaliatory efforts, including excluding Plaintiff from Defendant Murdock-Poff's public hearing were undertaken at the direction and in agreement with Defendant Murphy.

---

[9]      Count I of the Second Amended Complaint contains five paragraphs, numbered 36, 30, 31, 32, and 37, in that order.  The "General Allegations" also contains paragraphs numbered 30, 31, and 32 which are different than the paragraphs numbered 30, 31, and 32 in Count I.

[10]     The Second Amended Complaint contains two paragraphs numbered "31."  ECF No. 99.  The Court's citation to paragraph 31(2) refers to the second paragraph 31, sequentially.

APLT APP 166

Id. ¶ 40.

**Count III** alleges a claim under 42 U.S.C. § 1983 predicated on procedural due process violations (apparently against all four individual Defendants).  Id. ¶¶ 43-48.  Specifically, it alleges that "[t]he Orders issued by Defendants Murphy and Murdock-Poff and the actions taken by Jones and Rossignol deprive Plaintiff his fundamental liberty interests in speech, press and petitioning without due process of law, based solely upon discretion of the Defendants."  Id. ¶ 47.

**Count IV** alleges a violation of Article II, Sections 17, 18, and 23 of the New Mexico Constitution against Defendant Seventh Judicial District Court only.  Id. ¶¶ 49-52.  It alleges that the Seventh Judicial District Court violated "Plaintiff's constitutional rights of freedom of speech, freedom of press, freedom of assembly, and due process when [it] entered the Administrative Order[,] Amended Administrative Order[,]" and Judge Murdock-Poff's Order Excluding Presence, and when it had those Orders and Defendant Jones's Letters "served on Plaintiff with no notice and opportunity to be heard."  Id. ¶ 50.  It further alleges that the Seventh Judicial District Court violated Plaintiff's right to free speech under Article II, section 17, when it "retaliated against Plaintiff by ejecting him from the public hearing on May 18, 2023, by denying him access as member [sic] of the press to Defendant Murdock-Poff's public hearing, denying him statutory rights to access public records and harassing with unnecessary and chilling law enforcement presence."  Id. ¶ 51.

The Second Amended Complaint is asserted against the individual Defendants in their individual capacities only.  ECF No. 99 ¶¶ 3-6; see also id. at 1.  Counts I, II, and III seek declaratory and injunctive relief only, id. ¶¶ 37, 42, 48, while Count IV seeks actual damages from the Seventh Judicial District Court, see id. ¶ 52.

APLT APP 167

On March 6, 2024, Defendants filed a Motion to Dismiss arguing that the Second Amended Complaint should be dismissed for failure to state a claim.  ECF No. 105.  Plaintiff filed a Response, ECF No. 108, to which Defendants filed a Reply, ECF No. 109.  That Motion remains pending.

On May 1, 2024, the Court issued an Order to Show Cause raising the issue of whether Defendants are entitled to judicial immunity, quasi-judicial immunity, and/or Eleventh Amendment immunity; and even if they are not immune, whether Counts I, II, and III fail to state a claim under Section 1983 because the Second Amended Complaint seeks only injunctive relief from Defendants in their individual capacities.[11]  ECF No. 111 at 6-12.

On May 13, 2024, Plaintiff filed a Response, ECF No. 112, to which Defendants filed a Reply, ECF No. 113.

## II.   Discussion

For the reasons that follow, the Court finds that Counts I, II, and III must be dismissed with prejudice in part and without prejudice in part, and that Count IV must be dismissed without prejudice for lack of subject matter jurisdiction.[12]

---

[11]   See Hennessey v. Univ. of Kan. Hosp. Auth., 53 F.4th 516, 531 (10th Cir. 2022) (observing that a district court may raise Eleventh Amendment sovereign immunity sua sponte); Andrews v. Heaton, 483 F.3d 1070, 1076 & n.2 (10th Cir. 2007) (affirming district court's sua sponte dismissal of claims against judges based on absolute judicial immunity).

[12]   On September 29, 2023, Plaintiff filed a Motion asking the Undersigned Judge to recuse or disqualify herself from this case.  ECF No. 40.  The Court denied the Motion.  ECF No. 61.
Plaintiff begins his Response to the Court's Order to Show Cause by "renew[ing]" the concerns expressed in his Motion for recusal.  ECF No. 112 at 1.  The Court hereby adopts its prior Order denying Plaintiff's request for recusal and disqualification, finding no basis for recusal under 28 U.S.C. § 144, and finding disqualification improper under 28 U.S.C. § 455(a).

APLT APP 168

a. **Counts I, II, and III – Judicial Immunity, Quasi-Judicial Immunity, Declaratory Relief for Past Liability, and Individual Capacity Claims for Prospective Declaratory Relief**

As discussed below, the Court finds that to the extent the Counts I, II, and III seek injunctive relief, the individual Defendants are entitled to judicial and quasi-judicial immunity; and to the extent Counts I, II, and III seek (1) declaratory relief for past liability and (2) prospective declaratory relief against Defendants in their individual capacities, they fail to state claims upon which relief can be granted.

### 1. Judicial and Quasi-Judicial Immunity

"[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."[13]  Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (quotation marks and citation omitted).  Indeed, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."  Id. at 359.  Furthermore, "[b]y enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer."  Coleman v. Governor of Mich., 413 F. App'x 866, 873 (6th Cir. 2011) (quotation marks and citation omitted); see also Lawrence v. Kuenhold, 271 F. App'x 763, 766 n.6 (10th Cir. 2008) ("Section 309(c) of the FCIA bars injunctive relief in any § 1983 action 'against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.' Thus, the doctrine of

---

[13]     Similarly, in New Mexico, judges have absolute judicial immunity "from liability for their actions taken in performance of their roles as integral parts of the judicial process."  Hunnicutt v. Sewell, 219 P.3d 529, 533 (N.M. Ct. App. 2009) (quoting Collins ex rel. Collins v. Tabet, 806 P.2d 40, 45 (N.M. 1991)).  To determine whether a defendant enjoys absolute judicial immunity, the Court applies "a functional test to determine whether the acts alleged by Plaintiff were judicial functions."  Id. (citing Collins, 806 P.2d at 45).

APLT APP 169

judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well."); 42 U.S.C. § 1983 (providing that injunctive relief shall not be granted in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable).

The Supreme Court has stated that "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. However, the Supreme Court "has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity." Forrester v. White, 484 U.S. 219, 227 (1988). Instead, it has explained that "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Id.

"Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mierles v. Waco, 502 U.S. 9, 11 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id. Rather, judicial immunity is overcome in only two circumstances. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Id. (citations omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12 (citations omitted).

"Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[ ] absolute immunity from liability for damages in a suit challenging conduct prescribed by that

APLT APP 170

order.'" Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990) (citations omitted) (quoting Valdez v. City & Cnty. of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989)).  Additionally, "absolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'"  Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000) (quoting Eades v. Sterlinske, 810 F.2d 723, 726 (10th Cir. 1987)).  Like judicial immunity, "quasi-judicial immunity" is absolute immunity from suit.  See Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006) (citing Horwitz v. State Bd. of Med. Exam'rs, 822 F.2d 1508, 1513 (10th Cir. 1987)).

Here, the Court finds that Counts I through IV are all predicated on the issuance and execution of: (1) Chief Judge Murphy's Administrative Order barring Plaintiff from entering the Torrance County District Courthouse in Estancia, New Mexico (unless appearing for a hearing or having specific Court business, and then only with a law enforcement escort); (2) Chief Judge Murphy's Amended Administrative Order barring Plaintiff from all of the Seventh Judicial District's magistrate and district courthouses (unless appearing for a hearing or having specific Court business, and then only with a law enforcement escort); (3) Chief Judge Murphy's decision to remove Plaintiff from a hearing being held virtually via video conference; and (4) Judge Murdock-Poff's Order Excluding Plaintiff's Presence at a hearing in a civil matter.  See ECF No. 99 ¶¶ 30(2)-31(2), 40, 47, 50-51.  Because "issuing administrative orders is a function normally performed by a chief judge[,]" Reynolds v. Flynn, Civil Action No. 21-cv-01154-RM-NYW, 2022 WL 20538911, at *3 (D. Colo. Mar. 31, 2022), it is a judicial act to which judicial immunity applies, id.  "And to be sure, judicial control over who may appear before a judge is inherently a judicial act, not an administrative one."  Kazarinoff v. Wilson, Civil Action No. 1:22-cv-02385-PAB-SKC, 2023 WL 9183661, at *5 (D. Colo. Nov. 21, 2023) (finding that judicial immunity

protected chief judge who issued an administrative order preventing the plaintiffs from entering the courthouse).  As such, an order (or other act) barring an individual from entering the courthouse or a courtroom is a judicial act to which judicial immunity applies.   Stevens v. Osuna, 877 F.3d 1293, 1305 (11th Cir. 2017) (holding that a judge's order removing the plaintiff from the courthouse was a judicial function and observing that "[j]udges have an obligation to maintain control over the courthouse and over the conduct of persons in the courthouse; the issuance of an order removing persons from the courthouse in the interest of maintaining such control is an ordinary function performed by judges . . . ."); Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994) (holding that a probate judge was entitled to judicial immunity because the act of barring the plaintiff from entering the courtroom is "clearly" a judicial act); Montana v. Connor, 817 F. Supp. 2d 440, 451 (D.N.J. 2011) (concluding that judge's act of barring the plaintiff from the courtroom was a judicial act subject to absolute judicial immunity); see also Orta v. Repp, Case No. 3:22-CV-00359-JGC, 2022 WL 17617308, at *5 (N.D. Ohio Dec. 13, 2022) (finding that "exercising control of the courtroom is . . . a judicial act").   And because the Administrative Order and Amended Administrative Order are facially valid, Defendants Jones and Rossignol's actions to execute and enforce those Orders are subject to quasi-judicial immunity.   See generally Moss v. Kopp, 559 F.3d 1155, 1165-67 (10th Cir. 2009); see also Smith v. Finch, 324 F. Supp. 3d 1012, 1020 (E.D. Mo. 2018) ("[A]bsolute quasi-judicial immunity may apply to court employees or other government employees when they perform acts closely related to the judicial function, such as carrying out a judge's order.") (citing Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988) ("Clerks of court have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction."))

APLT APP 172

Plaintiff argues that the Supreme Court's decision in Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 735-36 (1980) permits him to maintain an action against Defendants for declaratory and injunctive relief.  ECF No. 112 at 2-4.  Plaintiff is half-correct: "judicial immunity does not necessarily foreclose declaratory relief in the appropriate case[.]"  Ysais v. New Mexico, 373 F. App'x 863, 866 (10th Cir. 2010) (emphasis added).  However, "[t]he 1996 amendments to § 1983 superseded Consumers Union with respect to injunctive relief."  Perkins v. Sauvaine, C/A No. 6:12–1085–TMC–JDA, 2012 WL 2874043, at *3 (D.S.C. June 1, 2012) (emphasis added).  "Thus, the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well."  Lawrence, 271 F. App'x at 766 n.6.

Accordingly, to the extent that Counts I, II, and III seek injunctive relief, the Court finds that they are barred by absolute judicial and quasi-judicial immunity.  See Hill v. Town of Valley Brook, 595 F. Supp. 3d 1030, 1040-41 (W.D. Okla. 2022) (finding that the defendant was entitled to judicial immunity from claims for injunctive relief); Flanders v. Snyder Bromley, Civil Action No. 09–cv–01623–CMA–KMT, 2010 WL 2650025, at *6 (D. Colo. Apr. 9, 2010) (recommending dismissal of claims for injunctive relief because the defendant was entitled to judicial immunity), report and recommendation adopted, 2010 WL 2650028 (D. Colo. June 30, 2010).  The claims for injunctive relief in Counts I, II, and III are therefore dismissed with prejudice.  See Mehdipour v. Matthews, 386 F. App'x 775, 778, 780 (10th Cir. 2010) (affirming dismissal with prejudice of Section 1983 claims barred by judicial immunity); Matios v. City of Loveland, No. 23-cv-01844-WPJ, 2024 WL 896758, at *4 (D. Colo. Mar. 1, 2024) (dismissing with prejudice claims barred by judicial immunity).

### 2. Declaratory Relief Based on Past Liability

On the other hand, as mentioned above, "Section 1983 does not preclude declaratory relief against a judicial officer." Catanach v. Thomson, 718 F. App'x 595, 599 n.4 (10th Cir. 2017) (citing Lawrence, 271 F. App'x at 766 & n.6). However, "not every plaintiff is entitled to this remedy." Lawrence, 271 F. App'x at 766. Rather, the plaintiff must be seeking a declaration of future rights, and not simply a declaration of past liability. Id.; see also Ysais, 373 F. App'x at 866 ("A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.").

The Court finds that to the extent Counts I, II, and III seek a declaration regarding the constitutionality of (1) Chief Judge Murphy's decision to eject Plaintiff from a virtual hearing on May 18, 2023; (2) Judge Murdock-Poff's Order Excluding Plaintiff's Presence from a hearing on May 24, 2023; (3) Defendant Jones's Letters informing Plaintiff of the Administrative Orders; and (4) past actions of Defendant Rossignol, see ECF No. 99 ¶¶ 19-20, 22-23, 28-30(1), 30(2)-31(2), 40, 47, they must be dismissed because they are seeking a declaration of past liability. See Lawrence, 271 F. App'x at 766-67 (holding that the district court properly dismissed the plaintiff's claim for a declaration that a judgment entered by a state court judge should be vacated as void because it was seeking a declaration of past liability, not of future rights between the plaintiffs and the judge); Stubbs v. Skrepenak, 1:22-CV-00940, 2022 WL 22738280, at *7 (M.D. Pa. Aug. 22, 2022) (recommending dismissal of a claim for declaratory relief against judicial defendants because the plaintiff was seeking to adjudicate alleged past unlawful activity), report and recommendation adopted, 2022 WL 22738282 (M.D. Pa. Nov. 10, 2022); Flanders, 2010 WL 2650025, at *7 (recommending dismissal of a claim for a declaration that a judge's order violated

13

APLT APP 174

the plaintiff's constitutional rights because the plaintiff was seeking a declaration of past liability),
report and recommendation adopted, 2010 WL 2650028 (D. Colo. June 30, 2010).

Because claims seeking a declaration of past liability are "not cognizable[,]" Lawton v. Bd.
of Regents of Univ. of Neb., 4:21CV3162, 2022 WL 2047600, at *9-10 (D. Neb. June 7, 2022),
they are dismissed with prejudice for failure to state a claim, id. at *9-10, 23 (dismissing with
prejudice claim for declaratory relief to adjudicate past liability because such claims are "not
cognizable").  See also Corbin v. French, CIVIL ACTION NO. 22-CV-3016, 2022 WL 17251756,
at *5 (E.D. Pa. Nov. 28, 2022) (dismissing with prejudice a claim seeking a declaration that the
defendants violated his constitutional rights because "[d]eclaratory relief is unavailable to
adjudicate past conduct").

### 3.  Individual Capacity Claims for Prospective Declaratory Relief

Although the Court finds that Counts I, II, and III also seek prospective declaratory relief
to the extent they seek a declaration that Chief Judge Murphy's Administrative Order and Amended
Administrative Order continue to violate his constitutional rights, they must be dismissed because
they are asserted against Chief Judge Murphy in her individual capacity only.

"Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive
or declaratory relief."[14]  Chilcoat v. San Juan Cnty., 41 F.4th 1196, 1214 (10th Cir. 2022) (citing
Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011)).  See also BEG Invs., LLC v.
Alberti, 34 F. Supp. 3d 68, 80 (D.D.C. 2014) ("Courts have concluded that 'there is no basis for
suing a government official for declaratory and injunctive relief in his or her individual or personal

---

[14]    Plaintiff appears to concede this point in his Response, see ECF No. 112 at 2, and requests leave to
amend to name Defendants in their official capacity, id. at 2, 5.

capacity.'") (quoting <u>Hatfill v. Gonzales</u>, 519 F. Supp. 2d 13, 19 (D.D.C. 2007), and collecting cases).

Here, the Second Amended Complaint names Chief Judge Murphy in her individual capacity only. Accordingly, to the extent Counts I, II, and III seek prospective declaratory relief, they are dismissed without prejudice for failure to state a claim. <u>Id.</u> (dismissing claim for declaratory relief asserted against the defendants in their individual capacities).

In sum, Counts I, II, and III are: (1) dismissed <u>with</u> prejudice to the extent they seek injunctive relief because the individual Defendants are entitled to absolute judicial and quasi-judicial immunity from such claims; (2) dismissed <u>with</u> prejudice for failure to state a claim to the extent they seek a declaration of past liability; and (3) dismissed <u>without</u> prejudice for failure to state a claim to the extent they seek prospective declaratory relief against Chief Judge Murphy.

Because Counts I, II, and III seek <u>only</u> (1) injunctive relief and (2) a declaration of past liability as to Judge Murdock-Poff, Defendant Jones, and Defendant Rossignol, all claims asserted as to those Defendants are dismissed with prejudice and those Defendants shall be terminated from this action. The Court will grant Plaintiff leave to amend Counts I, II, and III to name Chief Judge Murphy in her official capacity.

### b. Count IV – Eleventh Amendment Immunity

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment [also] bars suits in federal court against a nonconsenting state brought by the state's own citizens." <u>Williams v. Utah Dep't of Corr.</u>, 928 F.3d 1209, 1212 (10th Cir. 2019). "This immunity extends to arms of the state and to state officials

who are sued for damages in their official capacity." Id.  See also Colby v. Herrick, 849 F.3d 1273, 1276 (10th Cir. 2017) ("Eleventh Amendment immunity extends to governmental entities that are considered arms of the state.").  Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction. Williams, 928 F.3d at 1212.

Thus, "[a] plaintiff . . . may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA [New Mexico Tort Claims Act] contains a waiver of immunity."  Williams v. Bd. of Regents of Univ. of N.M., 20 F. Supp. 3d 1177, 1186 (D.N.M. 2014) (citing Chavez-Rodriguez v. City of Santa Fe, No. CIV 07–633 JB/DJS, 2008 WL 5992269, at *6-7 (D.N.M. Oct. 17, 2008); Barreras v. N.M. Corr. Dep't, 62 P.3d 770, 776 (N.M. Ct. App. 2002) ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 952 P.2d 474, 477 (N.M. Ct. App. 1997) ("Plaintiff may not seek damages from the City for violation of state constitutional rights unless immunity is waived under the Tort Claims Act[.]"); Rubio v. Carlsbad Mun. Sch. Dist., 744 P.2d 919, 922 (N.M. Ct. App. 1987); Begay v. New Mexico, 723 P.2d 252, 255 (N.M. Ct. App. 1985)).  "Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed."  Id. (citing Begay, 723 P.2d at 255).  See also N.M. Stat. Ann. § 41-4-4 ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978.").

APLT APP 177

In Count IV, Plaintiff has asserted a claim for damages against a governmental entity arising out of violations of rights under the New Mexico Constitution.  ECF No. 99 ¶¶ 49-52.  As such, it is barred by sovereign immunity unless the NMTCA contains a waiver of immunity.  See Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (holding that the New York Unified Court System ("NYUCS") is "unquestionably" an arm of the state and that plaintiff's claims for damages against the NYUCS were therefore barred by the Eleventh Amendment); Darcy v. Lippman, 356 F. App'x 434, 436 (2d Cir. 2009) (same); Johnson v. New Jersey, 869 F. Supp. 289, 296-97 (D.N.J. 1994) (finding that the "New Jersey Superior Court is an 'arm' of the state entitled to share in the state's sovereign immunity" and dismissing claim for damages against the state court).

Plaintiff argues that the NMTCA's waiver of immunity for violations of civil rights applies here.  ECF No. 112 at 4-5 (citing N.M. Stat. Ann. § 41-4A-3).  That waiver provides, in relevant part:

> A. A public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall not subject or cause to be subjected any resident of New Mexico or person within the state to deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico.
>
> B. A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

N.M. Stat. Ann. § 41-4A-3(A) & (B) (emphasis added).  By its own terms, this waiver is limited to actions commenced "in any New Mexico district court."  Id.

The Tenth Circuit has interpreted analogous language in the New Mexico Tort Claims Act ("NMTCA") to mean that a plaintiff cannot "pursue [a] claim against [a state public body] and its employees acting within the scope of their employment

17

in the federal district court, but rather is relegated to the state district court to seek
relief consistent with the limited waiver of immunity under [the NMTCA]."

Valdez v. Grisham, 559 F. Supp. 3d 1161, 1181 (D.N.M. 2021) (quoting Bishop v. John Doe 1, 902

F.2d 809, 810 (10th Cir. 1990)).  The Valdez court further rejected the plaintiff's argument (which

Plaintiff also makes here) that the court had supplemental jurisdiction over the complaint's claims

under the New Mexico Civil Rights Act because "'immunity under the Eleventh Amendment is

not abrogated by 28 U.S.C. § 1367, and therefore, § 1367 does not authorize federal district courts

to exercise jurisdiction over claims against nonconsenting states.'"  Id. (quoting Quarrie v. N.M.

Inst. of Mining & Tech., No. 13-cv-0349 MV/SMV, 2014 WL 11456598, at *2 (D.N.M. Feb. 25,

2014) (citing Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 542 (2002))).  The Court agrees

with this analysis and adopts it.  Consequently, the Court finds that Count IV is barred by Eleventh

Amendment immunity.

Because Count IV is barred by Eleventh Amendment immunity, it must be dismissed

without prejudice for lack of subject matter jurisdiction.  See Colby, 849 F.3d at 1278 (holding that

a dismissal based on Eleventh Amendment immunity is without prejudice).

### III.   Conclusion

Accordingly, it is **HEREBY ORDERED** that:

1. Counts I, II, and III are **DISMISSED WITH PREJUDICE** to the extent they seek (1)

   injunctive relief and (2) a declaratory judgment regarding past liability;

2. Counts I, II, and III are **DISMISSED WITHOUT PREJUDICE** to the extent they seek

   prospective declaratory relief regarding the constitutionality of Chief Judge Murphy's

   Administrative Order and Amended Administrative Order;

APLT APP 179

3.  Count IV is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

4.  Defendants Motion to Dismiss Plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § 1983; Violations of Rights Protected by the New Mexico Civil Rights Act, ECF No. 105, is **DENIED AS MOOT**;

5.  Defendants Shannon Murdock-Poff, Jason Jones, Susan Rossignol, and the Seventh Judicial District Court are **TERMINATED** from this action; and

6.  Plaintiff shall have **FOURTEEN DAYS** within which to file a Third Amended Complaint for prospective declaratory relief against Chief Judge Murphy in her official capacity. However, **<u>Plaintiff is advised that this may be the last amendment the Court permits him to make, so care should be taken to remedy all deficiencies, whether discussed in this Order or not</u>**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

**APLT APP 180**